IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Nutrien AG Solutions, Inc.,**          ) | |
|     Plaintiff,                                          ) | |
|                                                               ) | |
| v.                                                              ) | CIVIL ACTION NO. 25-00155-KD-M |
|                                                               ) | |
| **Ronald Lee Wiggins, Jr., individually** ) | |
| **and d/b/a R & K Farms**                ) | |
|     Defendant.                                     ) | |

**ORDER**

This action is before the Court on the Motion for Default Judgment, (Doc. 6), filed by Plaintiff Nutrien Ag Solutions, Inc. ("Nutrien" or "Plaintiff") against Defendant Ronald Lee Wiggins, Jr., individually and d/b/a R & K Farms ("Wiggins" or "Defendant"). Upon consideration, and for the reasons below, the motion is **GRANTED**.

**I.      Background**

At various times in 2023, Nutrien provided and delivered goods and services to Wiggins for his farming operation pursuant to two accounts, Account 7379 (the "Wiggins Account") and Account 3698 (the "R & K Account") (collectively, the "Accounts"). (Doc. 1 at 2). In 2024, Wiggins became delinquent in payment under the Accounts. (Id.). In forbearance of pursing immediate collection, Nutrien and Wiggins entered into a promissory note on December 3, 2024 (the "Note"). (Id.; Doc. 1-1). The Note allowed Wiggins to pay the balances due under the Accounts by June 15, 2025. (Doc. 1-1 at 2).

Under the Note, Wiggins promised to pay Nutrien for the Wiggins Account, in the sum of $192,687.40, which consisted $160,021.88 in principal and $32,665.52 in accrued interest plus interest at the rate of 9% percent per annum on the principal balance of the Wiggins Account in accordance with the payment schedule set forth therein. (Doc. 1-1 at 2). Wiggins also promised to

pay Nutrien for the R & K Account, in the sum of $93,125.22, which consisted of $83,689.59 in principal and $11,946.31 in accrued interest plus interest at the rate of 9% per annum on the principal. (Id.). The Note set forth a payment schedule where Wiggins was obligated to make the following payments to Nutrien: a $20,000.00 payment due at signing; $20,000 payments due on December 15, 2024, January 15, 2025, February 15, 2025, March 15, 2025, April 15, 2025, and May 15, 2025; and a final balloon payment of the remaining principal and all accrued interest for each of the Accounts on June 15, 2025. (Id.).

Under the Note, a default can occur when several events happen, including when Wiggins fails to make the scheduled payments when due. (Id. at 10). An event of default allowed Nutrien to declare the entire obligation immediately due and payable at once, with interest on the unpaid principal of the Accounts to accrue at the default rate of 18% per annum. (Id.). Further, the Note provided that Wiggins "agrees to pay to Lender on demand all cost and expenses Lender incurs under this Note . . . including the reasonable fees and expenses of attorneys" in connection with the Note's preparation, collection, and enforcement. (Id. at 3–4).

Wiggins defaulted under the Note by failing to make the scheduled payments as and when due. (Doc. 6-2 at 5). Nutrien accelerated all amounts due for the Accounts and demanded full payment under the Note on March 24, 2025. (Id.). Wiggins failed to pay the principal and interest due for the Accounts following receipt of the demand. (Id.).

On April 14, 2024, Nutrien sued Wiggins for breach of contract. (Doc. 1). The Complaint sought a judgment in the total amount of $281,663.06 plus attorneys' fees, expenses, and costs. (Id. at 6). On June 16, 2025, Nutrien filed an application for an entry of default against Wiggins, and Nutrien filed a Motion for Default Judgment. (Docs. 5–6). On June 1, 2025, the clerk entered default against Wiggins for failure to plead or otherwise defend. (Doc. 8).

II.     **Law**

"There are two steps in the default process: (1) getting the clerk to make an entry of default; and then (2) obtaining judgment on the default." 2 Steven S. Gensler, Fed. R. Civ. P., Rules and Commentary Rule 55 (2024). The core of default under Rule 55 is the failure to timely file a required responsive pleading. Id. However, the Eleventh Circuit has a "strong policy of determining cases on their merits." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015). Thus, "default judgments are generally disfavored." Id. at 1245. Still, the default mechanism is necessary "so that 'the adversary process [will not be] halted because of an essentially unresponsive party.'" Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (alteration in original) (quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)). Therefore, a default judgment is "warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Surtain, 789 F.3d at 1245 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)). And to ensure the validity of a default judgment, the court must determine its jurisdiction both over the subject matter and the parties. See Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).

III.    **Jurisdiction and Entry of Default**

A.      **Subject-matter jurisdiction**

For federal diversity jurisdiction to attach, opposing parties must have completely diverse citizenship and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). A corporation is a citizen of its state(s) of incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1). A person is a citizen of the state in which he is domiciled—the state of his home and where he intends to remain. McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002). "A

3

plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003). The party invoking federal jurisdiction bears the burden of establishing facts supporting its existence by a preponderance of the evidence. Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1085 (11th Cir. 2010).

Here, Nutrien meets its burden of showing diversity jurisdiction. Nutrien is a citizen of Delaware and Colorado because it is incorporated in Delaware and has its principal place of business in Colorado. Nutrien alleges that Wiggins is a citizen of Alabama. And Nutrien claims more than $75,000 in controversy. Therefore, this Court has subject-matter jurisdiction.

**B. Personal jurisdiction**

"Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process." Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 925 n.15 (11th Cir. 2003). It is well-established that both service of process within the forum state and citizenship in the forum state are ways in which a person is subject to personal jurisdiction in the forum. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880–81 (2011). Here, Defendant was served within Alabama and is a citizen of Alabama. Therefore, he is amenable to jurisdiction in Alabama.

Still, the district court lacks personal jurisdiction over a defendant who has not been properly served. Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990); Fuqua v. Turner, 996 F.3d 1140, 1154 (11th Cir. 2021) ("Proper service of process is a jurisdictional prerequisite."). Defendants can be properly served in compliance with either the federal rules or the state law in the state where the district court is located or where service is made. See Fed. R. Civ. P. 4(e)(1); Fed. R. Civ. P. 4(h)(1)(A). An individual—other than a minor, an incompetent

4

person, or a person whose waiver has been filed—may be served in a judicial district of the United States by delivering a copy of the summons and complaint to the individual personally or by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(A–B); see also Ala. R. Civ. P. 4(c)(1). Under Alabama law, the completion and filing of a return of service constitutes prima facie evidence of that service. Hooie v. Barksdale, 93 So. 3d 942, 945 (Ala. Civ. App. 2012). Here, a summons and complaint were personally served on Ronald Lee Wiggins in Alabama, as evidenced by the private process server's Proof of Service under penalty of perjury. (Doc. 4). Thus, the requirements for service have been met for Wiggins. Fed. R. Civ. P. 4(e)(2)(A); see also Ala. R. Civ. P. 4(c)(1).[1] And this Court has personal jurisdiction over Wiggins.

C. **Entry of Default**

Upon application by Nutrien, the clerk entered default pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 8).

IV.    **Analysis**

The standard for determining whether there is a "sufficient basis" for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245. Under this standard, the court looks to see whether the complaint contains sufficient facts, "accepted as true, to state a claim for relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A default judgment is warranted "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Importantly, a defaulted defendant is deemed only to admit the plaintiff's well-pleaded allegations of fact—not unsupported facts or conclusions of law. Id.

---

[1] Nutrien has provided an affidavit swearing that, based upon information and belief, Wiggins is not an infant, incompetent, or in active military service. (Doc. 6-1 at 4 ¶ 8).

Here, Nutrien's complaint alleges breach of contract under Alabama law for Wiggins's failure to pay amounts owed under a promissory note. (Doc. 1). The complaint requests a judgment "in the total amount of $281,663.06, plus attorneys' fees, expenses, the costs of this action, and such further relief as the Court deems just and proper." (Doc. 1 at 6). Therefore, the Court must determine whether there is sufficient basis for a default judgment for breach of contract and attorney's fees, expenses, and costs.

A. **Breach of Contract**

"Alabama law firmly embraces the concept of freedom of contract" such that "[c]ontracts between competent parties, voluntarily and fairly made, are valid and enforceable." Berkel and Co. Contractors, Inc. v. Providence Hosp., 454 So. 2d 496, 505 (Ala. 1984). The elements for a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendants' nonperformance; and (4) resulting damages. Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002). "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 673 (Ala. 2001). "Under Alabama law, production of a properly executed note, valid and unsatisfied on its face, makes a prima facie case of default." Wells Fargo Bank, N.A. v. Trotman, 940 F. Supp. 2d 1359, 1364 (M.D. Ala. 2013) (citation modified). "Forbearing to pursue a legal right, which often takes the form of refraining from prosecuting a lawsuit, has long been recognized as valid consideration supporting a contract." Pretl v. Ford, 723 So. 2d 1, 5 (Ala. 1998)

Nutrien's complaint plausibly states a breach-of-contract claim against Defendants under Alabama law. Nutrien produced the Note executed by Wiggins attached to both the Complaint and to the Motion for Default Judgment. (Doc. 1-1; Doc. 6-2 at 8–12). The Note shows consideration

based on Nutrien's agreement to forbear pursing immediate collection under the contracts and account documents related to the Accounts in exchange for Wiggins's promise to pay the debt owed. (Doc. 6-2 at 9). Under the Note, a default can occur when several events happen, including when Wiggins fails to make the scheduled payments when due. (Id. at 10). Nutrien alleges that Wiggins breached the Note's terms by failing to make the scheduled payments when due, and Nutrien supplies evidence that on March 24, 2025, it sent written notice regarding the default to Wiggins. (Doc. 6-2 at 14). Thus, Nutrien has demonstrated that Wiggins defaulted under the Note, and Nutrien plausibly alleges a breach-of-contract claim.

B. **Attorneys' Fees, Expenses and Costs**

"[A]ttorney fees may be recovered if they are provided for by statute or by contract." Jones v. Regions Bank, 25 So. 3d 427, 441 (Ala. 2009). The Note provides that Wiggins "agrees to pay to Lender on demand all cost and expenses Lender incurs under this Note . . . including the reasonable fees and expenses of attorneys" in connection with the Note's preparation, collection, and enforcement. (Doc. 6-2 at 10–11). Therefore, Nutrien plausibly alleges entitlement to attorneys' fees, expenses and costs.

C. **Damage Awards**

"A court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). Often, this requires an evidentiary hearing before a court grants a default judgment. See S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). But an evidentiary hearing is not a per se requirement. Id. at 1232 n.13. No hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." Id. Thus, "the hearing requirement can be satisfied

7

by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it." Gensler, supra, Rule 55 (citing S.E.C. v. Smyth, 420 F.3d at 1232 n.13).

Nutrien's Motion for Default Judgment requests damages for breach of contract in the amount of $181,036.80 for the Wiggins Account, $100,626.26 for the R & K Account, plus 18% in prejudgment interest on the remaining principal of the Accounts from March 31, 2025, until the date of judgment. (Doc. 6 at 11–12). Nutrien also requests attorneys' fees, expenses, and costs in the amount of $4,477.72, and post-judgment interest at the rate provided for by law. (Id. at 12).

1. Nutrien provides a legitimate basis for the requested damages for breach of contract.

Nutrien's evidence in support of its motion includes the Note, the Demand Letter, and an affidavit from its Special Assets Manager (Jeff Cochran). (Doc. 6-2). According to Cochran's affidavit, Wiggins was obligated to make certain payments under the Note, and Wiggins defaulted by failing to make the scheduled payments when due. (Doc. 6-2 at 4–5). Cochran's affidavit also explains that the Note provides for interest on the unpaid Principal at the rate of 18% per annum upon an event of default. (Id. at 5). Cochran attests that Wiggins owes Nutrien $181,036.80 for the Wiggins Account—consisting of $140,021.88 in principal and $41,014.92 in interest as of March 31, 2025. (Id.). And Cochran attests that Wiggins owes Nutrien $100,626.26 for the R & K Account—consisting of $83,689.59 in principal and $16,936.67 in interest as of March 31, 2025. (Id.). Thus, Nutrien provides a legitimate basis for a damage award of $281,663.06 for breach of contract as of March 31, 2025.

2. Nutrien provides a legitimate basis for prejudgment interest.

Prejudgment interest is governed by state law in diversity-of-citizenship actions. Walker v. Life Ins. Co. of N. Am., 59 F.4th 1176, 1192 (11th Cir. 2023). "Alabama law allows litigants to

recover pre-judgment interest at a contractually specified rate for breach of contract claims." Id. The Note provides that upon default, Wiggins owes interest on the unpaid principal of the Accounts, which accrues at the default rate of 18% per annum. (Doc. 1-1 at 10). The unpaid principal on the Wiggins Account is $140,021.88. (Doc. 6-2 at 5). Eighteen percent of this principal amount is $25,203.94, which equals $69.05 in interest per day. The unpaid principal on the R & K Account is $83,689.59. (Id.). Eighteen percent of this principal amount is $15,064.13, which equals $41.27 per day. Thus, Nutrien is entitled to prejudgment default interest in the amount of $110.32 per day from March 31, 2025, until the date of this order.

    3.   <u>Nutrien provides a legitimate basis for the requested attorney's fees and costs.</u>

The attorneys' fees requested result from an alleged breach of contract, and the consequences of a judgment in favor of Nutrien requires Wiggins to pay Nutrien's attorneys' fees and costs. (Doc. 6-2 at 10–11). Thus, a separate motion for attorney's fees is not necessary.[2] But attorneys' fees must be reasonable. "Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation." <u>Willow Lake Residential Ass'n, Inc. v. Juliano</u>, 80 So. 3d 226, 241 (Ala. Civ. App. 2010). Therefore, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." <u>Ex parte Edwards</u>, 601 So. 2d 82, 85 (Ala. 1992).

Nutrien's attorney (Patrick Sefton) attests to the reasonableness of the attorneys' fees, costs, and expenses sought. (Doc. 6-1). Sefton provides the hourly rate for his time ($285–$290) and for his firm's associate's time ($170–190). (Id. at 3). Sefton provides the number of hours that he and the associate worked, 4.60 and 12.40 hours respectively. (Id. at 3). In sum, Nutrien requests

---

[2] "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A).

9

$3,651.50 in attorneys' fees. Sefton's affidavit also explains the amount requested for expenses and costs—totaling $826.22. (Id. at 4). Based on the Court's discretion, the requested attorneys' fees, expenses, and costs in the total amount of $4,477.72 is reasonable.

    4.   Nutrien provides a legitimate basis for post-judgment interest.

"Unlike pre-judgment interest, post-judgment interest is governed by federal law in diversity cases." Walker v. Life Ins. Co. of N. Am., 59 F.4th 1176, 1194 (11th Cir. 2023). Federal law provides that post-judgment interest on a money judgment in a civil case can be recovered, and "[s]uch interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The weekly average 1-year constant maturity Treasury yield rate, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of this judgment is 3.87%. Selected Interest Rates, Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/h15/ (last visited Aug. 6, 2025). Thus, Nutrien is entitled to post-judgment interest at a rate of 3.87%.

    **V.**    **Conclusion**

Nutrien's Motion for Default Judgment provides the necessary facts and law. Nutrien's Complaint plausibly alleges a claim for breach of contract, and Nutrien provides a legitimate basis for its requested damage award. Nutrien's complaint plausibly alleges a claim for attorneys' fees, expenses, and costs, and Nutrien provides a legitimate basis for the reasonableness of its requested fees. Therefore, Nutrien's Motion for Default Judgment, (Doc. 6), is **GRANTED**.

Accordingly, Default Judgment shall be entered in favor of Nutrien and against Defendant Ronald Lee Wiggins for the following:

a) $181,036.80 due under the Wiggins Account, which consists $140,021.88 in principal and $41,014.92 in interest as of March 31, 2025, plus default interest on the unpaid principal at the rate of 18% per annum ($65.05 per day) until entry of judgment; and

b) $100,626.26 due under the R & K Account, which consists of $83,689.59 in principal and 16,936.67 in interest as of March 31, 2025, plus default interest on the unpaid principal at the rate of 18% per annum ($41.27 per day) until the entry of judgment; and

c) Reasonable attorneys' fees in the amount of $3,651.50; and

d) Costs and expenses in the amount of $826.22; and

e) Post-judgment interest at the rate of 3.87%

The Clerk is ordered to send a copy of this order to Defendant's address as provided by Nutrien. Judgment will be entered by separate document as required by Federal Rule of Civil Procedure 58(a).

**DONE** and **ORDERED** this the **7th** day of **August 2025**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**